The next case today is Ching-Li Lin v. TipRanks, Ltd. Limited Appeal Number 201001. Mr. Jacobson, you may begin when you're ready. Good morning and may it please the court, this is Jonas Jacobson for the appellant Ching-Li Lin. This is an appeal of a motion to dismiss for lack of personal jurisdiction where the plaintiff stock analyst was improperly evaluated by TipRanks, an Israeli company that used her as part of its marketing efforts in a freemium model business. Just to pause there for a minute, freemium is a kind of marketing that's regularly done on the World Wide Web where businesses offer a part of their service or product for free to potential users of their website in hopes that some number of those people will sign up for the premium version of the website. The issue here is when a person is used for that purpose, when a stock analyst is used for that purpose, whether she may hail the defendant into court on grounds of purposeful abatement. In connection with that, I think the district court, when it was looking at this case, made a central mistake in understanding what a freemium model is. On page 127 of the appendix, page 10 of its opinion, the court says, �TipRanks subscription service is an ancillary feature on its website, which primarily serves to provide information.� That's just not true. TipRanks is a for-profit company. They are trying to get people to sign up for the subscription service. There is nothing ancillary about its central business model and there are some questions that have to be answered in this case. For example, if it were simply that they were putting useful information out there as to who the best stock analysts were, why wouldn't they just limit that to the best 30 analysts out of 4,800 or the best 50 out of 4,800? Who on earth is interested in the 4,700th best stock analyst in the country? No one except the people that are interested in that particular analyst. Those are the only people that care about that ranking. Where do those people disproportionately live? They disproportionately live in Massachusetts where the analyst lives. I think the people most interested in her analysis are probably her potential employers in Massachusetts, but also friends of hers, her colleagues, but someone far away is not going to be interested at all. I meant to ask if I could reserve a couple of minutes at the end of my argument for rebuttal. I don't know if I can do that now. Yes, you can have two minutes, but we'll subtract the time from your remaining time on your main argument. That's just fine. I appreciate it. Sorry about that. Why don't I leave it there and see if there are any questions? I'm sure you've read the papers and may have something you want to ask me. Just following up on your point that potential employers located in Massachusetts were also damaged, I guess the flip side of your argument is that potential employers were also damaged through the loss of their opportunity to employ Lynn. Do I understand that correctly? That's correct. In this case, how many employers would that be? What is the universe of employers who would have been able to employ her? In the paper, she says she applied for over 100 jobs and I have a record available to the defendant of a number of those jobs that she applied for, so I would say it was probably about 100. She's my client, so I think that she probably would have been an asset to any business, but some of those businesses may not have hired her because they had a better candidate. I think the record in this case shows that she has a great resume. She went to Columbia for business school. She's a specialist in biotech companies. After the ranking was removed, she got a job offer within a month. But is there any evidence in the specific jurisdiction record that any of those prospective employers saw this website? Well, I'll say no. There's no specific evidence of specific employers at this motion to dismiss stage, but I think the inference is that employers did see the Tip Ranks website because of the fact that she tried for months to get a job and then only when it was removed, she was able to get a job within a month. Because we have to have the inferences drawn in our favor, I think that's sufficient to I had two questions for you. One is about the long-arm statute, and one maybe relates to the long-arm statute, but certainly relates to the due process inquiry. Okay. With respect to the long-arm statute under 3C, do you know this case, Walker v. Adams? I don't have it off the top of my head, but what's your question? It's a 2016 Mass Appellate Court decision, and I'll just read you the language from it. It's an internet libel case, a defamation case. It says, we conclude that for personal jurisdiction to be supported based upon a defamatory internet communication originating outside of Massachusetts, for the defamatory act to be considered as having occurred in Massachusetts for the purposes of Section 3C, the court must find that the person harmed was specifically targeted. The publisher knew that such person lived in Massachusetts, and the defendant intended to harm that individual's reputation in Massachusetts. Now, the second part of that, the publisher knew that such person lived in Massachusetts, there's just no evidence to support that position, I think you even have conceded. So I'm just struggling how you can fit within the long-arm statute if Walker v. Adams is controlling, and I don't really see why it wouldn't be if it's a Mass Appellate Court decision interpreting 3C. I think 3A and 3D also support jurisdiction, and I only have to clear the bar on any one of those. And this court need not affirm on 3C, or excuse me, agree with the district judge with respect to 3C. You could also say that 3A applies or 3D applies, because a tort did occur in Massachusetts With respect to specifically targeting, I would say this, the facts of that case notwithstanding, there was a commercial purpose here in Tip Rank's use of Ching-Yi's name. They wanted those people connected to Ching-Yi to buy their service. And that commercial purpose, I think, is material in finding that she was specifically targeted here in Massachusetts. They wanted those people in Massachusetts to... Yeah, but there's two different questions, and this goes to the due process inquiry. There's the initial question of, do they have to have known she was in Massachusetts? And I think we are, if I'm understanding you, you're not disputing that there's no evidence to suggest or even an allegation that they knew she was in Massachusetts. That's correct, but there's also no evidence that they used a PHP script to block access to the website in Massachusetts. There's no evidence that they put a disclaimer and said, if any analyst is located in Massachusetts, this is erroneous. I mean, they had a way of protecting themselves. They didn't do that. Are you saying that because of that, we could find that they did know she was in Massachusetts? I'm saying that they specifically targeted her wherever she was with the purpose of soliciting her potential employers and friends. I understand that. I'm just asking a different question. Are you disputing whether they knew she was in Massachusetts? I'm not disputing that. Okay. Then, with respect to the due process part of it, the question I had is, what are we supposed to do about the language in Walden versus Fiore, which relies on Calder, which is that it's not enough to look only at where the defamatory effects are, although that is itself can be a contact, which is what I think you're saying here, but that there also had to be some evidence that they knew where the person was. There is that parenthetical drawing on Calder, that sort of parenthetical phrase drawing on Calder, in Walden versus Fiore, that seems to suggest it mattered that in Calder, the defamer knew the jurisdiction that the defamer was in. You seem to be wanting us to hold that even if the defendant does not know where the target of the defamation is, there still is a possibility for jurisdiction in that locale. I'm just wondering what authority you have that we should rely on, because Calder doesn't say that, and Walden doesn't say that, so I'm just not seeing a case that does say that. Well, I think we should return to first principles and look at, is it random, isolated, or fortuitous that they're being brought into court in Massachusetts? To a certain extent, that case law is an anachronism. There's going to be websites that do this. There's already been jerk.com. I think we cited it in our briefs. I think you should read it, because the facts are pretty tough in that case. Those are rough facts. If that's right, then could you just help me, so I take the point, could you just give me a sense of the boundaries, then, of where the personal jurisdiction could lie? If she now moves to Tennessee, are they now liable in Tennessee? If she is located in Boston and she's applying for jobs only in Hawaii, are they liable for having jurisdiction in Hawaii, because that's where she's trying to get her new job? You see what I'm saying? I get the point that logically it should travel with her to some extent, but what is the limit on that, or is the limit just where she takes action that makes the reputational harm to her most acute? That's a great question. I think I would say it probably stays in the forum that she is where she is most harmed. There's a piece, obviously, on the other side of the potential employers that could be hiring her, but for the mistaken information that they obtained from this website. They also have a stake, and those employers also should have... That's not to say that they're going to receive damages in this lawsuit, but for the purposes of jurisdiction, we want to make sure that there's fairness for everybody concerned. By protecting herself from this kind of defamatory circumstance, Ms. Lynn also protects those So I suppose for that reason, you would have to do a kind of effects test. I don't think Hawaii would be an appropriate location for jurisdiction if she never applied for a job there. But if she did, it would be? I think there would have to be a factorial test that looked into the effect on the forum of the damage to the party asserting specific jurisdiction based upon the commercial defamatory conduct. I just wanted to ask the follow-up on the policy question and boundaries here. Is there not a serious risk that finding personal jurisdiction in this case would open the door to personal jurisdiction over any website maintaining defendant? I think there is not a serious risk, because this website does something unique, distinct from Chen and distinct from the Connecticut newspaper case, in that it trades on Ching-Yi's good name. A good name is something we should all value. I think it's reasonable that if you are going to trade on someone's good name for your freemium business that you should expect to be found where they are. We cannot use other people to sell our products and then say, well, we don't live there and escape jurisdiction if we say something untruthful. You would agree that our analysis is sort of a two-step analysis. First we satisfy ourselves under the long-arm statute, and if that's satisfied, then we move to due process. I think that's correct, yes. Under due process, there are a number of different elements and factors. One is, and you've referenced it, that is purposeful availment. The district court held that the purposeful availment requirement was not satisfied here. Do you want to address that? Thank you. As I said at the outset, I think that the district court came to that conclusion in what this website is. This is a commercial website designed to sell subscription services. The subscription services portion of the website is not ancillary. I would agree, I think, with the district court's finding if someone had, as a hobby, decided to rank every analyst based on software they had developed and they did not have a commercial purpose for that necessarily. The purposeful availment here was the hope that the use of her profile would encourage people to purchase their service. Are you familiar with the Plixer International versus Scrutinizers case, the First Circuit case? I've definitely read it, if the court would refresh me. It stands for the proposition where the foreign owned website sold defendant's product directly into the forum, reflected defendant's voluntary service of US customers, and where defendants used its website to obtain US customers and received nearly 200,000 business over three and a half years, that the purposeful availment element was satisfied. I would agree with that. I think that supports our case. I think that the most useful case for the court to review is the Health Grades case, which is a district court opinion. It's the case most analogous to the facts at issue here, it's a 2003 case, and it's on page 20 of our main brief. In that case, they had a very similar situation, it was an entity that was rating physicians and the physician's practice group said, �Hey, wait a minute, you've given us a low rating that we don't deserve.� I just want to make clear, that's different. This case is different than, for example, Yelp. Some consumer comes on and makes a rating and just uses the Yelp platform. That's very different from the website itself affirmatively making the rating and saying, �This is based on objective factors,� but she didn't rate the stocks that they're saying were the basis for the rating. Is there evidence in the record that on the premium subscription service side of it, how much of Massachusetts business there was used? Mr. Gruenbaum in his affidavit says, that's on page 32, he says, �We didn't obtain derived substantial revenue from Massachusetts.� I don't know what that means. I don't know very much about the size of their business. We haven't had any discovery yet. What does the complaint allege about what the premium service did with respect to Massachusetts? Just that there is one? Just that there is one. Can that be enough? In other words, there's two different things that are going on. There's the question of does the premium service exist and is it just ancillary, which I understand you're objecting how the district court assessed it. I read the district court also to be focused on the fact that there's nothing indicating it was focused on Massachusetts. Is there any evidence that bears on that with respect to the premium service? You were saying earlier, there was no evidence to indicate in the record that the defendant knew that the plaintiff was in Massachusetts at any point. I guess you're saying that we can read into the affidavit by tip ranks that they did some business with the subscription model in Massachusetts? Correct. A number of their other analysts are located in Massachusetts. I think the number one analyst they rate is a Massachusetts-based analyst. Thank you, Mr. Jacobson. You've reserved some time. Thank you, Judge. We'll hear from Mr. Schwab. Good morning. May it please the court. My name is Ephraim Schwab on behalf of Defendant Appellee's Tip Ranks. The district court's decision to dismiss the complaint for lack of personal jurisdiction against tip ranks should be affirmed. The plaintiff did not satisfy its burden of proving that personal jurisdiction exists over the defendants in Massachusetts. As set forth in Tip Ranks Brief, exercising jurisdiction over tip ranks does not comport with due process. The district court set forth the three-part test for finding due process satisfied. The second and third of the conditions, purposeful availment and reasonableness, were not satisfied based on the pleadings in this case. With respect to purposeful availment, Tip Ranks has a website which is not directly targeted at Massachusetts. It's merely targeted to the world at large, including Massachusetts. It happens to be that plaintiff was at one point located in the commonwealth, but that doesn't allow for jurisdiction. The fact pattern is very similar to this court's recent decision in the Chen case, in which the court held that there was no personal jurisdiction in Massachusetts. And it was not a defamation case, though. It was not a defamation case, but there were more... The thing is, suppose you have a business model which says the following, this person is a terrible analyst, and wherever she is, the community that's around her should know how terrible she is. Your position would be there's no jurisdiction anywhere but Israel for that, right? I think that the Walden case says that there has to be more contact with the jurisdiction Your position is that you could have a website that says, just one person, Lynn, she's terrible, she's a terrible analyst, don't hire her, wherever she is, employers in that community don't hire her, and she could only sue you in Israel. Yeah, I think what we wrote at the end of the brief was that if there's direct targeting of a party, that's what we wrote at the end of our papers, if there's direct targeting of a potential plaintiff, then in that case, theoretically, maybe there would be jurisdiction, but that's not what the complaint... Why would it be different if there's 4,000 different individual people targeted? I don't understand how that can help you. Well, if there's direct targeting, then there may be more of a connection to the... Oh, meaning 4,000 versus one? Yeah. Oh, you know, if you have a general website that evaluates based on what TipRanks does, based on publicly available information, various analysts, and the analyst happens to live in a certain state... What do you mean by direct targeting? Maybe it would help me to understand. Oh, I think if they're intentionally... What happened in Walden and what happened in those other cases, in the West Virginia case that was quoted by the plaintiffs, is that the defendant was targeting a certain person, writing an article based on sources in California, based on sources in West Virginia. There was very, very specific allegations relating to the... It was a specific publication relating to that particular state. In that case, we... is a terrible analyst. I don't know where she is, but wherever she is, the community of people around her should know what a terrible analyst she is. Your position is you could do that on a website and they could only sue you in Israel. I think that's right. I think that is what I think the case law says. Meaning, the Walden case, somebody writes an article. It's talking about Calder versus Jones. In the Walden case, the court said that even though Shirley... Theoretically, if Shirley Jones is wherever she is, that wouldn't be enough. They write a terrible article about Shirley Jones and wherever she is is not enough. They have to gather information relating to California. There has to be more contacts with respect to California. That's what the Supreme Court said in Walden concerning Calder versus Jones. I think in the Chen case, I know it's not a defamation case, but nevertheless, the contacts with Massachusetts were greater than they were in this case. The contacts were that the plaintiff is purchasing material from a website that's interactive, sitting in Massachusetts, having email communications with the seller of the educational courses. There's back and forth, paying money. The allegations were that they were paying money from Massachusetts. The First Circuit, your court, said that that's not enough because even though there are allegations, both tort allegations and breach of contract allegations, that wasn't enough  because it's not significant enough to comply with purposeful availment. I believe that the Chen case was a better case for finding purposeful availment and the court found that it does not constitute purposeful availment. I think the same reasoning applies here. What is the logic, taking my hypothetical, what is the logic of saying that a company that has a business model analyzing someone's reputation and makes it clear that what they're trying to do is affect their reputation in their relevant community, knowing that they're going to be somewhere but doesn't know where they are, can set themselves up doing that in a place that's very difficult for the victim of the targeting to meaningfully litigate? If I just think about, was it voluntary on the part of the defendant to set themselves up for that? Yes. Was it foreseeable that that person would be in a jurisdiction? Yes. If the jurisdiction they ended up being in is really difficult for you to litigate in, the reasonableness inquiry protects you from a due process perspective. So what is the point of pre-permitting the inquiry so we don't even get to reasonableness and just saying, even if it would be perfectly reasonable to have you litigate in Massachusetts, just because you were willfully blind to where she was, you can never be sued there. I don't get the policy for that. I'm not sure it's a policy or it's just the minimal context that a defendant needs to have with the forum in order for there to be purposeful availment of that forum. We're not purposefully doing anything in Massachusetts with respect to this analyst. It's a publication. The analyst moved eight months. She was in Massachusetts for eight months, but then she moved to New York. Theoretically, wherever she moves, as Your Honor pointed out, wherever she moves, under the other theory, she has jurisdiction. What's the difference between this jurisdiction and any other jurisdiction? The policy would be that tip ranks could be hauled into court in 50 states based on that theory, and the courts have been finding that that shouldn't be the case, that there has to be more of a connection to the particular forum in order for the defendant to be a defendant in the case. It wouldn't be 50 states at once. I guess it might, according to the theory, because who says she applied only in Massachusetts? Then you could do something like Keaton, and you would just look at how intensive were the contacts. It might not be enough to have a single contact of an effect, a minimal effect. Keaton suggests that you might have to have 10,000 circulated newspapers. It's different than five circulated newspapers in a jurisdiction under Keaton. You could do a similar type of analysis here, but you certainly knew that there was a jurisdiction in which her reputation would be affected significantly. Yes or no, I'm not sure. The plaintiff does have the option of going to Israel and suing. It's not like the defendant is not subject to any lawsuit. There are many lawsuits that are brought in foreign countries when the foreign defendant doesn't have a presence in the United States and is not with respect to no particular state. The district court also found that even if there was purposeful availment, that it would be unreasonable for the defendant to be sued in Massachusetts. As the court is aware, there are five factors that are looked into. The district court found that the plaintiff did not satisfy the second, fourth, and fifth factors. The plaintiff did not address any of these factors, I believe, with respect to the second factor. The district court found that the commonwealth's interest is diminished by the fact that Lynn no longer maintains a residence in Massachusetts. In fact, the record shows that she moved three years ago from Massachusetts. They brought the lawsuit three years after she moved. They failed to show or allege any facts demonstrating that tip ranks conducted a significant amount of business in Massachusetts or otherwise implicated Massachusetts citizens. She claims, does she not, that there would be a number of witnesses in Massachusetts and that the judicial system has an interest in obtaining effective resolution in Massachusetts? In terms of her witnesses, she didn't identify any witnesses. She said that she applied for jobs in Massachusetts. She didn't identify a single employer who looked at this and said, that's why I'm not hiring her. She didn't identify anybody who looked at the website. She just said that she surmises that there must be employers that looked at the website and that's why they didn't hire her. That's the second factor. What about the factor of obtaining convenient and effective release? The answer to that is nobody is in Massachusetts. There are the plaintiff, who is in New York, and tip ranks, which is located in Israel. The district court concluded that because the primary witnesses and evidence are located outside of Massachusetts, then the interest of the judicial system in providing effective relief factor was not satisfied. Potentially, had she identified some employers, she might have found some witnesses, but she didn't identify any witnesses. Certainly, the primary witnesses are not located in Massachusetts. The final factor, the fifth factor for determining reasonableness, the common interest of all sovereigns in promoting substantive social policies, the court focused on whether businesses that do not target the commonwealth should be subject to jurisdiction. That's been a factor that courts look into. Tip ranks is not focusing on Massachusetts. There's nothing about what they said about her. They don't even know she was located. They didn't know she was located in Massachusetts. We submit that jurisdiction in these circumstances because plaintiffs happen to be located in Massachusetts at a particular point in time is insufficient to satisfy this fifth factor. Therefore, as the district court concluded, the balance of the Gestalt factors leads to the conclusion that the exercise of jurisdiction over tip ranks would not be reasonable. Additional questions? Thank you, Mr. Schwalb. Mr. Jacobson, you reserve some time. Mr. Jacobson, I can't hear you. One more time. How about now? Yes. Okay. All right. Thank you. Ching-Yi was forced to leave Massachusetts to go live with family because she ran out of money because she couldn't get a job. The harm did occur here, and the witnesses, the companies that she applied to, and all her friendships were here in Massachusetts. I appreciate that that information isn't a part of this specific record, but I think on a motion to dismiss, you've got to take her affidavit of faith. She's got a pretty good resume. I think I can cover that bar. I wanted to briefly address Walker v. Adams, the case that Judge Barron mentioned. Massachusetts has a two-tiered appellate system. There's the Massachusetts Appellate Court, and then there's the Appellate Division, which reviews decisions of the District Court, which is for money matters below $25,000, appeals of small claims. It's sort of the collections court, the small torts court. Decisions of the Appellate Division, and Walker v. Adams is an Appellate Division decision, are binding only on the Appellate Division. Judge Barron, you asked me, do we have to follow that decision? Answer, no. I also think that there's some questions here about the applicability of that case, because Walker v. Adams references the Zippo test, but this is an active website, as opposed to, I believe, the website in Walker. Finally, I'd like to just point out that with respect to Chen, the distinction between what happened to Ching-Yi and Mr. Chen is that Mr. Chen had a choice. He chose to go to this college, and he knew where they were located when he chose to go to the college. Ching-Yi did not have a choice. They just flew into her home and defamed her and really ruined her life. Are there any further questions? I want to make sure the court has time. Thank you very much. The court will take a five minute recess.